**UNITED STATES DISTRICT COURT FOR THE**
**DISTRICT OF COLUMBIA**

Case No.: 1:20-cv-2250

| | |
|---|---|
| Salvatore Mancuso Gomez**,** ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | |
| ) | |
| Chad F. Wolf, Acting Secretary, ) | |
| U.S. Dept. of Homeland Security, ) | |
| ) | |
| Matthew T. Albence, Acting Director, ) | **PETITION** |
| U.S. Immigration and Customs Enforcement ) | |
| ) | |
| Henry Lucero, Executive Associate Director ) | |
| Enforcement and Removal Operations, ICE ) | |
| ) | |
| Thomas P. Giles, Field Office Director ) | |
| Atlanta ICE Field Office ) | |
| ) | |
| Katrina S. Kane, Deputy Assistant Director ) | |
| ICE Air Operations ) | |
| ) | |
| William Barr, ) | |
| U.S. Attorney General ) | |
| ) | |
| Respondents. ) | |

**PETITION FOR WRIT MANDAMUS AND INJUNCTIVE RELIEF**

**PRELIMINARY STATEMENT**

This action challenges the unreasonable delay to remove the Petitioner from the United States to

Italy pursuant to a final administrative removal order signed on April 15, 2020. The Petitioner

seeks Mandamus and Injunctive Relief to compel the Department of Homeland Security to comply

with the 90-day removal period in 8 U.S.C. § 1231(a)(1)(A).

1.  Petitioner, a dual citizen of Italy and Colombia, brings this action for statutory relief

    pursuant to the law, including the U.S. Constitution, Mandamus Act (28 U.S.C. § 1361),

    All Writs Act (28 U.S.C. § 1651), Declaratory Judgment Act (28 U.S.C. § 2201), and the

    Administrative Procedures Act (5 U.S.C. § 551 et seq., 5 U.S.C. § 701 et seq.)


2.  On March 27, 2020, Mr. SALVATORE MANCUSO was transferred to ICE custody after

    serving a conviction for drug traffic. Petitioner is detained in Irwin County Detention

    Center and more than 90 days have passed after the final administrative order was issued.


3.  On April 15, 2020, Enforcement and Removal Operations - ICE issued an administrative

    removal order, which Petitioner accepted as final (see Exhibit A). This administrative

    order is the equivalent to a removal order entered by an U.S. Immigration Court.

    Subsequently, the Petitioner made all possible efforts to expedite the application for a

    travel document and transport arrangements necessary for his removal to Italy. He never

    obstructed in any way the removal efforts.

**JURISDICTION AND VENUE**

4.  This Court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question statute), this

    action arising under the Mandamus Act, by 28 U.S.C. § 1361; this action arising under the

    All Writs Act, by 28 U.S.C. § 1651; this action arising under the Declaratory Judgment Act,

by 28 U.S.C. § 2201; this action arising under the Administrative Procedures Act, by 5 U.S.C. § 551 et seq.; this action arising under the U.S. Constitution and federal laws.

5.   Venue is proper in this District pursuant to 28 U.S.C. § 1391(e) because Respondents reside and operate within this District, and a substantial part of the events or omissions giving rise to this action occurred within this District. The division assigned with the responsibility of removing aliens with outstanding removal orders, Enforcement and Removal Operations, is based in the District of Columbia and said task involves various components of this agency division that are located in various parts of the country. In fact, the detainee is in the State of Georgia and for that reason the Atlanta Field Office is responsible for the ongoing detention of the Petitioner, complete periodic custody reviews, request the necessary travel document, and request the transport of the detainee to Italy; ICE Air Operations is located in Mesa, AZ is responsible to transporting the detainee from the State of Georgia to Italian territory with any necessary stopover at any other connecting place; and there are other components within Immigration and Customs Enforcement that handle security and logistics aspects of the removal. All of these tasks are supervised, controlled, and managed by Enforcement and Removal Operation in Washington, DC.

**PARTIES**

6.  Petitioner Salvatore Mancuso-Gomez[1] ("Petitioner") is a citizen of Colombia and a Citizen of Italy.  Petitioner entered the United States with parole for purpose of criminal prosecution on May 13, 2008.

7.  Respondent Chad F. Wolf is the Acting Secretary of the U.S. Department of Homeland Security and is the direct supervisor of the Director of Immigration and Customs Enforcement. Therefore, he is the ultimate decision-making authority over the Petitioner's removal.

8.  Respondent Matthew T. Albence is the Deputy Director performing duties of Director of Immigration and Customs Enforcement, DHS.  Pursuant to, *inter alia*, 8 U.S.C. § 1103, he is charged with, among other matters, administering ICE by implementing and

---

[1]     Mr. Salvatore MANCUSO GOMEZ is a former member of the United Self-Defense Forces of Colombia, who voluntarily demobilized and turned himself to the Colombian authorities 14 years ago. He surrendered and abode by the rules and procedures in the Colombian Justice and Peace Act. Consequently, he was charged, processed, convicted, and sentenced in a special jurisdiction court in Colombia. The criminal proceeding in such special jurisdiction accumulated all charges as per the special provisions in a statute enacted precisely to promote and facilitate a peace process aiming to end an armed conflict that lasted for more than 40 years (Ley 975 de 2005, Ley de Justicia y Paz, Dario Official 45.980). He offered full cooperation to the authorities both in Colombia and in the United States, where he also faced charges and was convicted. During all years of incarceration, he offered full cooperation to the authorities providing statement and information that has been extremely valuable for multiple investigations, prosecutions, and convictions.

As evidence of his cooperation and the significance of his demobilization and surrender to the authorities, we can cite Mr. Mancuso's earlier invitation to appear before the Colombia Congress in July of 2004 to deliver a speech and endorse the Justice and Peace Bill (Proyecto de Ley de Justicia y Paz), promoting the peace process as viable path to peace in Colombia (please see press note as Exhibit N). He invited other political combatants to demobilize, to encourage their future surrender, and their adherence to the upcoming peace initiative under the promise that all would enjoy due process warranties and fair trials. The speech sparked an almost unanimous stand-up ovation in the Colombian Congress.

In the following two years (after his 2004 speech to the Colombian Congress) he prompted thousands of combatants to leave their arms and turned themselves to the authorities. He has shown remorse and never ignored the deplorable methods used to finance and fight a war against left wing guerrilla forces (ELN and FARC) on behalf of the Colombian government (self-defense groups were initially financed and trained by the Colombian Government). Mr. Mancuso accepted responsibility for and decried the criminal activities that were associated or imputed to the armed group to which he belonged. The ultimate political goals and alignment with interests of the Colombian government though never were an excuse for the AUC crimes have been considered mitigating factors.

enforcing the Immigration and Nationality Act.  As such, he has decision-making authority over the matters alleged in this Complaint.

9.  Respondent Henry Lucero, Executive Associate Director, Enforcement and Removal Operations, ICE, DHS (ERO).  In his capacity as the ERO Associate Director, Mr. Lucero is responsible for detention and removal of aliens both while facing removal proceedings and after an order of removal is entered.  As such, he has decision-making authority over most matters alleged in this Complaint.

10.  Respondent, Tomas P. Giles, Atlanta ICE Field Office.  In his capacity as the Director of the Atlanta Field Office, Mr. Giles is responsible for the detention of the Petitioner, review of his custody conditions, securing travel documents, requesting transport arrangements, and overseeing other preparatory aspects of the Petitioner's removal.  As such, he has decision-making authority over some matters alleged in this Complaint.

11.  Respondent, Katrina S. Kane, Deputy Assistant Director of ICE Air Operations.  In her capacity as the Director of ICE Air Operations, Ms. Kane is responsible for making arrangements for, and transporting the Petitioner from the United States to Italy, and by the agency own statement ICE Air Operations manages one of the critical aspects of the Petitioner's removal.  As such, she has decision-making authority over some matters alleged in this Complaint.

12. Respondent William Barr is the U.S. Attorney General.  Pursuant to, *inter alia*, 8 U.S.C. § 1103, he is charged with controlling determination of all issues of law pertaining to immigration and with representing the United States of America in various legal matters.

### STATEMENT OF FACT

13. On March 13, 2008, Mr. Salvatore MANCUSO was extradited to the U.S. and once again charged, processed, convicted, and sentenced this time by the U.S. District Court for the District of Columbia. (Please see copy of the plea agreement and sentence imposed as Exhibit O).  In both proceedings (in Colombia and in the U.S.), he admitted criminal responsibility, was sentenced, and convicted as per plea agreements that demanded full cooperation, which he provided without reservations whatsoever despite knowing the severe consequences it would have for him and his family.  The testimony provided implicated more than 50 senators that were dismissed, charged, and sentenced, as well as many congressmen, governors, mayors' councilmen, army generals, and police generals. Many have been charged and sentence, and other have pending investigations including a former President, a current ambassador, and other powerful politicians eager to silence the Petitioner and retaliate against him for the revelations made.    His cooperation triggered a ferocious persecution that includes assassination and kidnapping attempts again Mr. MANCUSO's family. His ex-wife and youngest child were granted asylum and today are U.S. citizens. The Petitioner, through his extensive declarations made enemies at the highest levels of power, including high ranking officers of the ruling party in Colombia and inner circle of the current administration.

14. On February 11, 2020, undersigned Counsel following the Petitioner's instructions, established contact with ICE Atlanta Field Office (please see Exhibit C.1) to express his desire to cooperate with the removal process and facilitate the execution of an administrative removal order to Italy. At the same time, he made clear to the ERO/ICE officers that he fears persecution and tortured if returned to Colombia.

15. On March 27, 2020, Mr. MANCUSO was transferred to ICE Custody. Undersigned Counsel contacted the ICE Atlanta Field Office to pave the way for Mr. MANCUSCO's removal to Italy, where he is a citizen and where he does not fear persecution and torture. (Please see Exhibit C).

16. On April 15, 2020, the Petitioner was ordered removed to Italy. See Exhibit A.  A copy of his Italian passport was provided along with sufficient information to prepare a request for an emergency Travel Document to the Italian Consulate. Mr. MANCUSO, through undersigned counsel, also communicated with the Italian Consulate in Miami in preparation for the expected request for a Travel Document, which was ready to issue a Travel Document without delays.  Please see Exhibit D.

17. On April 23, 2020, the Italian Consulate received ICE/ERO's request for a Travel Document, but soon it became evident that ICE Air Operation was not making arrangement to transport Mr. MANCUSO GOMEZ to Italy any time soon.  ICE Atlanta Field Office asked the Italian Consulate to put on hold processing the Travel Document. (Please see email of Officer Coffer of April 28, 2020 enclosed as Exhibit D).  ICE Atlanta

Field Office concluded that security escorts were required, and Petitioner was not going to be transported within the 30-day validity of the travel document.

18. Mr. MANCUSO's parents communicated their willingness and financial capacity to purchase a one-way ticket to Italy without restriction so that a removal order could be effectuated without additional expenses to the U.S. Government and without further delays. Furthermore, when ICE/ERO informed Mr. MANCUSO that his removal would require security escort to Italy, his parents confirmed the ability and willingness to purchase tickets for the two ICE officers that were going escort Mr. MANCUSO. Both offers were rejected. Please see as Exhibit C.4 copy of email sent to Officer Coffee and Ms. Alicia Ferra in this respect

19. As the Petitioner's administrative detention was approaching the thirds month, on June 10, 2020, Mr. MANCUSO requested to be enrolled in an Alternative to Detention (ATD) program and released with an order of supervision and the safeguards that ERO could deem appropriate or necessary in his case (Please see copy of request enclosed as Exhibit E). He provided evidence of the health problems suffered as consequence of the COVID-19 infection, other humanitarian considerations, and an argument to overcome the foreseeable presumption that he represents a danger to the community. On June 15, 2020, Ms. Ferra informed undersigned counsel that Mr. MANCUSO's request for release on an ATD program pursuant to the Fraihat v. ICE preliminary injunction was denied because "ICE considers Mr. Mancuso to be a threat to public safety due to the nature of his criminal conviction." (see Exhibit E).

20. On June 24, 2020, he was transferred to Robert A. Dayton Detention Center after a Complaint for Provisional Arrest with a View Towards Extradition was filed in the USDC for the Middle District of Georgia, Valdosta Division Civil action no. 20-CV-116 (HL). Pursuant to the Government's request, the Honorable Judge Hugh Lawson dismissed the Complaint (See Exhibit F).   Therefore, Mr. MANCUSO was transferred back to ICE/ERO custody (Irwin County detention Center) to resume removal, but the ERO's response continued to be the same, ICE Air Operation still did not have "a route" to transport him to Italy.

21. The Petitioner has offered continuous cooperation and made efforts to cause his removal without delays:

| | |
|---|---|
| July 27, 2020 | At conference call with Ms. Alicia Ferra and officer Michael White, ICE Atlanta Field Office affirmed that despite the Field Office's determination to remove Mr. MANCUSO to Italy, a "travel route" route was not yet available.  (Exhibit G) |
| July 29, 2020 | Petitioner emailed Ms. FERRA following up on the removal arrangement. (Exhibit G) |
| July 29, 2020 | Petitioner sent a letter to ERO Executive Associate Director, Mr. Henry Lucero, petitioning his officer to instruct ICE Air Operation to make the travel arrangements without delays. (Exhibit G) |
| July 30, 2020 | Officer Michael D. White wrote an email confirming the situation remained unchanged and despite efforts of ICE Atlanta Field Office the transport arrangements had not been made. (Exhibit G) |
| August 5, 2020 | Petitioner sent a second letter to Mr. Lucero adding information to the earlier petition and highlighting the need to instruct ERO/ICE |

| | |
|---|---|
| | Atlanta Field Office to mail the request for a Travel Document that still had not been received by the Italian Consulate. (See Exhibit H). |
| August 5, 2020 | An email was sent to Ms. Ferra, Mr. White, and copying Deputy Field Office Director, Ms. Sullivan. |

22. On August 7, 2020, undersigned Counsel had not received any correspondence or verbal confirmation from Enforcement and Removal Operation that a Travel Document request had been in fact mailed and information showing progress with ICE Air Operation to arrange transportation for Mr. MANCUSO GOMEZ to Italy. A new letter this time addressed to Acting Secretary of Homeland Security, Honorable Chad E. Wolf; to the U.S. Attorney General, Honorable William Barr; and copying the U.S. Attorney for the District of Columbia, the General Counsel for the Department of Homeland Security, the Director of Immigration and Customs Enforcement, and the leadership of Enforcement and Removal Operations was prepared and mailed. (Please see Exhibit J). This letter informed the Department of Homeland Security and the U.S Attorney general about the violation of the 90-day removal period and the severe obstacles the Petitioner was facing to obtain reassurance from Enforcement and Removal Operations that removal arrangements had been made with the urgency the law requires.

23. In the late afternoon of August 7, 2020, undersigned counsel received an email from Ms. Alicia Ferra confirming that a second request for a travel document  had been mailed to the Italian Consulate in Miami and stated that  "We have obtained an itinerary for his travel to Italy and will forward it to the Consulate."  The response was encouraging and made the Petitioner believe that Enforcement and Removal Operations, under the

leadership of Executive Associate Director Henry Lucero, had issued instructions to the divisions under his control to effectuate the removal without delays.   (See Exhibit K).

24. The promising progress made by Enforcement and Removal Operation, according to email of Ms. Alicia Ferra dated August 7, 2020, proved in direct contradiction and disagreement with the actions of the U.S. Department of State. The President of Colombia and the Attorney General Office of Colombia (Fiscalía General de la Nación), revealed they had been in negotiation and receiving cooperation from the U.S. Embassy and the U.S. Department of State to facilitate a new extradition request. As result the Petitioner's removal to Italy has been delayed.

25. The first attempt to extradite Mr. MANCUSO GOMEZ fell apart when the underlying warrant for his arrest was declared unlawful, baseless, and unwarranted in Colombia. The decision of the U.S. District Court of the Middle District of Georgia made headlines pointing to the errors of the Colombian Government in the extradition process. The extradition request lost its basis was the message conveyed by press notes.  On August 7, 2020, the President of Colombia, Mr. Ivan Duque, in a video recorded interview removed all and any possibility that Mr. Salvatore MANCUSO could have of enjoying due process and procedural warranties in Colombia. The Colombian President revealed that his administration was in conversation with the U.S. Department of State to find a way, a mechanism, to bring Mancuso back to Colombia. The Public Ministry or Office of Attorney General in Colombia ("Fiscalia Geberal de la Nacion") also revealed cooperation with the U.S Department of State to facilitate the extradition, a extradition that at the time did not have even a warrant of arrest in Colombia.  The Colombian

Government started seeking desperately a court, any court in Colombia, willing to lend

its authority to the desperate campaign; a new warrant for arrest against Mr. MANCUSO

GOMEZ was needed regardless of the legality of the allegation and violations of due

process needed to obtain it.   The cooperation of the U.S. State Department and pressure

over ERO/ICE within the Department of Homeland Security to delay the removal process

made evident the urgent need that Petitioner has of Mandamus and Injunctive Relief.


26. In Colombia, courts are falling to the pressure from powerful actors that do not hide not

their determination to bring the Petitioner back to Colombia with disregard of the

unlawful means needed to secure a warrant or warrants for his arrest that could serve as

basis for an extradition request, all part of a desperate effort to silence him.   Many of

these actors have been directly implicated by testimony of Mr. MANCUSO GOMEZ

offered with details about their past involvement and support to the Self Defense Forces

in Colombia and its activities and some are today are prominent officer of the Colombian

Government. The risk of allowing Mr. MANCUSO GOMEZ to continue revealing the

truth and confronting corroborating witnesses is enormous, and so is the desire to retaliate

against him for the testimony provided.


27. As initially explained to Supervisor Ms. Ferra and later repeated to the leadership of

Enforcement and Removal Operations and Immigration and Customs Enforcement, Italy

made clear that they have been ready to accept the Petitioner, the Petitioner accepted as

final a removal order to Italy, more than 90-days passed and he has not been still removed

to Italy.  The only reason that could explain the delay executing the final order of removal

again the Petitioner is the deliberate decision of the U.S. Government to delay the removal of Mr. MANCUSO GOMEZ beyond the 90-day removal period at the request of Colombia.

28. Since Petitioner was unable to reach any resolution of this matter through the steps described herein, Petitioner, through counsel, sent an official complaint letter to the named Respondents dated August 7, 2020 explaining this situation and stating that if the removal is not swiftly completed, a civil suit will be filed in the Federal District Court. Please see copy enclosed as Exhibit J.

29. Given the most recent development, which we have explained above, the Petitioner has all reasons to believe there is no intention and/or plan to remove him to Italy. The Petitioner has chosen to file the present Complaint.  This action challenges only the Respondents' timeliness in the removal of Petitioner to Italy pursuant to the final administrative removal order of April 15, 2020 and seeks to compel the Department of Homeland Security, Immigration and Customs Enforcement, Enforcement and Removal Operation to remove Mr. MANCUSO GOMEZ to Italy without delays.

## SATATEMENT OF LAW

30. 8 U.S.C. § 1231(a)(1)(A) imposes an obligation on the Attorney General, acting in this case through Immigration and Customs Enforcement, to remove the detainee within 90 days:

"..when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days,.."

31. The Attorney General has discretion to remove an alien prior and within the 90-day period following the date ICE takes custody of a detainee that has been ordered removed, but not after the 90-day period has elapsed.  8 U.S.C. § 1231(a)(1)(A) grants the Attorney General a full 90-day period to effect an alien's removal after the alien is ordered removed and the alien is in custody. Within the 90-day period, the swiftness and diligence required from the Attorney General has been the subject of conflicting opinions.    In Zadvydas v. Davis, 533 U.S. 678 (2001), the "substantive" component of the Due Process Clause does not impose a requirement that the Attorney General act with any particular dispatch within the 90-day removal period. While the Attorney General's ability to delay removal of an alien within the 90-day period might be supported by law, might be a question of interpretation,  and a period in which factors could be considered to decide the opportunity to effectively remove an alien; such discretion does not exist after the 90-day period has passed. In the present case, there is no room for discretion and the duty imposed by the statute is clear and unequivocal.

32. In Hartford Underwriters Ins. Co. v. Union Planters Bank, 530 U.S. 1, 6 (2000) (quoting Conn. Nat'l Bank v. Germain, 503 U.S. 249, 254 (1992)) the Court stated as follows "[W]e begin with the understanding that Congress 'says in a statute what it means and means in a statute what it says there.'" Section 241(a)(1)(A) of the INA states that "[e]xcept as otherwise provided in this section, when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period')." Section 241(a)(2) provides that "[d]uring the removal period, the Attorney General shall detain the alien." The meaning

14

of the statute is plain on its face: the Attorney General is granted a full 90 day period after an alien has been ordered removed to effect the alien's removal. The legislative history here is consistent with the reading of the plain text of the statute; it confirms that Congress intended to give the Attorney General a full 90 days as a reasonable period of time within which to effect an alien's removal, but no more than 90 days.

33. The predecessor provision to the current of section 241(a)(1) appeared at 8 U.S.C. § 1252(c) (1994), and provided that:

> "When a final order of deportation under administrative processes is made against any alien, the Attorney General shall have a period of six months from the date of such order, or, if judicial review is had, then from the date of the final order of the court, within which to effect the alien's departure from the United States. Any court of competent jurisdiction shall have authority to review or revise any determination of the Attorney General concerning detention, release on bond, or other release during such six-month period upon a conclusive showing in habeas corpus proceedings that the Attorney General is not proceeding with such reasonable dispatch as may be warranted by the particular facts and circumstances in the case of any alien to effect such alien's departure from the United States within such six-month period."

34. In 1996 Congress made notable changes to the relevant statute, which we highlight here. The Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104-208, 110 Stat. 3009-546 shortened the removal period from 6 months to 90 days and eliminated any reference from the INA to a requirement that the Attorney General proceed with "reasonable dispatch" in effecting an alien's deportation. Congress could have added flexibility to the text or inserted language allowing discretionary

extensions to the period the Attorney General has to remove an alien, but it did not. Conversely, Congress viewed its newly established 90-day time frame as per se reasonable and sufficient period of time in which to effect an alien's deportation. ERO has had the means and ability to effectuate the order of removal within the 90-day removal period.

35. U.S. law also requires administrative agencies to conclude matters presented to them "within a reasonable time." *See* Administrative Procedure Act, 5 U.S.C. § 555(b). the reasonable time in this case is the 90-day removal period provided by the statute.

## CLAIMS FOR RELIEF

### COUNT ONE

Mandamus Action
28 U.S.C. § 1651, 28 U.S.C. § 1361

36. Petitioner re-alleges and incorporates by reference each and every allegation contained in Paragraphs 13 through 35 as if set forth fully herein.

37. This claim is brought under 28 U.S.C. § 1651 and 28 U.S.C. § 1361.

38. Respondent are charged with the mandatory responsibility of administering, implementing, and enforcing the Immigration and Nationality Act.

39. Respondents bear sole responsibility for timely removal of an alien with a final administrative removal order that is in custody of the Department of Homeland Security for the purpose of his removal.

40. Respondents have failed to discharge their mandated duties.

41. As a result, Petitioner have suffered and continue to suffer irreparable harm and damages entitling him to declaratory, injunctive, and other relief.

42. Petitioner have exhausted all possible administrative remedies and no other adequate remedy exists.

43. Strong humanitarian factors favor granting of Mandamus relief.

## COUNT TWO

Administrative Procedure Act
Unreasonable Delay, 5 U.S.C. §§ 555(b), 706(1)

44. Petitioner re-alleges and incorporates by reference each and every allegation contained in
   Paragraphs 13 through 35 as if set forth fully herein.

45. Petitioner brings this claim pursuant to 5 U.S.C. § 702, authorizing judicial review of
   agency actions or delays.

46. Respondents have unreasonably delayed Petitioner's removal in violation of 8 U.S.C. §
   1231(a)(1)(A), and this Court may compel action under 5 U.S.C. § 706(1).

47. Petitioner's removal order has been outstanding for more than 90 days, well in excess of
   the reasonable period Congress afforded the Attorney general to remove an alien.

48. Respondents have failed to discharge a mandatory duty.

49. As a result, Petitioner have suffered and continue to suffer unnecessary detention,
   irreparable harm, and damages entitling them to declaratory, injunctive and other relief.

## COUNT THREE

Declaratory Judgment Act
28 U.S.C. § 2201

50. Petitioner re-alleges and incorporates by reference each and every allegation contained in Paragraphs 13 through 35 as if set forth fully herein.

51. This claim is brought under 28 U.S.C. § 2201.

52. Petitioner contend that Respondents' actions, decisions, and omissions relating to the delays in removing the Petitioner are unconstitutional, violate the Immigration and Nationality Act and applicable regulations, and are arbitrary and capricious, and seek a declaration to that effect.

53. As a result of Respondents' actions and delays, Petitioner have suffered and continue to suffer irreparable harm and damages entitling them to declaratory, injunctive, and other relief.

## PRAYER FOR RELIEF

WHEREFORE, Petitioner respectfully requests the following relief:

a. Declaratory and injunctive relief.

b. An order compelling Respondents to perform their duty to remove Petitioner to Italy without delays, in the alternative release the Respondent from custody so he can make travel arrangements to departure the United States on his own.

c. Attorney's fees and costs.

d. Such other relief as the Court deems just and appropriate.

Respectfully submitted this 16th day of August of 2020 by:

 /s/ Hector G. Mora_____
Hector G. Mora, Esq.
DC Bar Number 489889
WMR Immigration Law Group, LLC
1789 Columbia Road NW, Ste. 200
Washington, DC 20009
Ph: (202) 558-6515
Fax: (866) 431-2916
Email: hmora@wmr-law.com

*Counsel for Petitioner*