UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Salvatore Mancuso Gomez, | ) | |
| | ) | |
| Petitioner, | ) | CASE NO. 20-CV-2250 (RJL) |
| | ) | |
| v. | ) | |
| | ) | |
| Chad F. Wolf, Acting Secretary, | ) | |
| U.S. Dept. of Homeland Security, *et al*. | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |

AMENDED PETITION FOR WRIT OF MANDAMUS AND INJUNCTIVE RELIEF

PRELIMINARY STATEMENT

This action challenges the unreasonable delay to remove the Petitioner, Salvatore Mancuso Gomez (hereinafter "Mr. Mancuso"), from the United States to Italy pursuant to a valid final administrative removal order signed on April 15, 2020.[1] The Petitioner seeks Mandamus and Injunctive Relief to compel the Department of Homeland Security to comply with the 90-day removal period set forth in 8 U.S.C. § 1231(a)(1)(A).

---

[1] On August 29, 2020 Petitioner was notified by the Department of Homeland Security (DHS) that it did not intend to honor Petitioner's country designation because it had been "determined pursuant to section 241(b)(2)(C)(iv) of the Immigration and Nationality Act (INA) that your removal to Italy ***at this time is prejudicial to the United States***." For the reasons set forth below, as well as in a related Petition for Writ of Habeas Corpus the Petitioner shall file, Petitioner maintains that DHS' determination is invalid and without effect because it violates his rights to due process under the Fifth and Fourteenth Amendments and was issued after the 90-day period provided under the law to effectuate his removal.

1.     Petitioner, a dual citizen of Italy and the Republic of Colombia, brings this action for statutory relief pursuant to the law, including the United States Constitution, the Mandamus Act (28 U.S.C. § 1361), All Writs Act (28 U.S.C. § 1651), the Declaratory Judgment Act (28 U.S.C. § 2201), and the Administrative Procedures Act (5 U.S.C. § 551 et seq., 5 U.S.C. § 701 et seq.).

2.     On March 27, 2020, Mr. Mancuso was transferred to ICE custody after serving the federal sentence imposed for his narcotics conviction.  Petitioner is currently detained in Irwin County Detention Center[2] and more than 90 days have passed since the valid final administrative order was issued.

3.     On April 15, 2020, Enforcement and Removal Operations – ICE (ERO) issued an administrative removal order, which Petitioner accepted as final (see "Exhibit 1" attached to ECF 1).  Subsequently, Petitioner made all possible efforts to expedite the application for a travel document and the travel arrangements necessary for his removal to Italy.  At no time did he obstruct any efforts to remove him.

JURISDICTION AND VENUE

4.     Jurisdiction is proper pursuant to 28 U.S.C. § 1331 (federal question statute), as well as the fact this action arises under the Mandamus Act (28 U.S.C. § 1361), the All Writs Act (by 28 U.S.C. § 1651), and the Declaratory Judgment Act (28

---

[2]     Within the last few days, Mr. Mancuso has been transferred to/from facilities located in two, separate federal jurisdictions.  Upon information and belief, he is currently located at the Irwin County Detention Center.

U.S.C. § 2201), the Administrative Procedures Act (5 U.S.C. § 551, et seq.), as well as the United States Constitution and other applicable federal laws.

5.     Venue properly lies in this district pursuant to 28 U.S.C. § 1391(e) because Respondents reside and operate, and a substantial portion of the events or omissions giving rise to this action occurred, within this district. The division of ICE assigned with the responsibility of removing aliens with outstanding removal orders, Enforcement and Removal Operations (ERO), is based in this district and its responsibility involves various components of this division that are located in various parts of the country. For example, Mr. Mancuso is in the State of Georgia and for that reason the Atlanta Field Office is responsible for his ongoing detention, completion of periodic custody reviews, requests for the necessary travel document and requests his transport to Italy.  However, ICE Air Operations, which is located in Mesa, AZ, is responsible to transport him from the State of Georgia to Italy with layovers as necessary at any other connecting place.  In addition, other components of ICE handle the security and logistics aspects of any removal.  Each and every one of these tasks are supervised, controlled and managed by ERO from this district.  Moreover, the purported determination that Petitioner's removal to Italy would be prejudicial to the United States was made by the Attorney General of the United States, who is also located in this district.  Further, as Petitioner is frequently moved between federal jurisdictions, venue in this district is more appropriate than in any other, given at least four of the Respondents are located herein.

PARTIES

6.     Petitioner Salvatore Mancuso-Gomez[3] ("Petitioner"/"Mr. Mancuso") is a citizen of both Italy and the Republic of Colombia.  Petitioner was extradited to the United States and entered with parole for the purpose of criminal prosecution on May 13, 2008.

---

[3]     Mr. Mancuso is a former member of the United Self-Defense Forces of Colombia ("AUC"), who voluntarily demobilized and surrendered to Colombian authorities fourteen years ago. Following his surrender, he complied with all rules and procedures of the Colombian Justice and Peace Act, pursuant to which he was charged and convicted before a court with special jurisdiction in Colombia.  The Justice and Peace Act was enacted as part of a peace process to end an armed conflict that persisted for more than forty years in Colombia (Ley 975 de 2005, Ley de Justicia y Paz, Dario Official 45.980).  Mr. Mancuso fully cooperated with law enforcement in both Colombia and the United States and throughout his period of incarceration provided invaluable information used in numerous investigations and prosecutions, as well as to secure several convictions.

The significance of Mr. Mancuso's surrender and cooperation cannot be overstated.  In July of 2004, he was invited to speak before the Colombian Congress to endorse the Justice and Peace Bill (Proyecto de Ley de Justicia y Paz) as a viable path to peace in Colombia (see "Exhibit 17" attached to ECF 1).  He encouraged other political combatants to demobilize and surrender with the promise that under the peace process each would be guaranteed fair trials and due process.  His address received a nearly unanimous standing ovation by the Colombian Congress.

As a result of Mr. Mancuso's encouragement, during the two years following his address, thousands of combatants laid down their arms and surrendered to Colombian authorities.  Since his surrender, Mr. Mancuso has always remained remorseful and never minimized the deplorable methods used to finance and fight the war against left-wing guerrilla forces (ELN and FARC) on behalf of the Colombian government (the AUC was initially financed and trained by the Colombian Government).  Mr. Mancuso accepted full responsibility for his part in, and condemned, the criminal activities attributed to AUC.  The ultimate political goals and interests of the Colombian government, with which it was aligned, were never treated as a mitigating factor by Mr. Mancuso.

7.     Respondent Chad F. Wolf is the Acting Secretary of the U.S. Department of Homeland Security[4] and is the direct supervisor of the Director of Immigration and Customs Enforcement.  Upon information and belief, he has the ultimate authority regarding Petitioner's removal.

8.     Respondent Matthew T. Albence is the Deputy Director and Senior Official Performing the Duties of the Director of Immigration and Customs Enforcement.   Pursuant to, *inter alia*, 8 U.S.C. § 1103, his duties include administering ICE by implementing and enforcing the Immigration and Nationality Act.   As such, he has decision-making authority over matters alleged in this Complaint.

9.     Respondent Henry Lucero is the Executive Associate Director of Enforcement and Removal Operations (ERO) at ICE.  In that capacity, Mr. Lucero is responsible for the detention and removal of aliens both during removal proceedings and once an order of removal has been entered.  As such, he has decision-making authority over most matters alleged in this Complaint.

10.     Respondent Thomas P. Giles is the acting Field Office Director for ICE and Enforcement Removal Operations (ERO) Atlanta.  In that capacity, Mr. Giles is responsible for the detention of Petitioner, review of his custody conditions, securing travel documents, requesting transport arrangements, and overseeing other

---

[4]   Mr. Wolf was recently nominated to become Secretary of the Department of Homeland Security.

preparatory aspects of Petitioner's removal.  As such, he has decision-making authority over some matters alleged in this Complaint.

11.    Respondent Katrina S. Kane is the Deputy Assistant Director for ICE Air Operations.  In that capacity, Ms. Kane is responsible for making arrangements for and transporting Petitioner from the United States to Italy.  By the agency's own statement ICE Air Operations manages a critical aspect of Petitioner's removal.  As such, she has decision-making authority over some matters alleged in this Complaint.

12.    Respondent William Barr is the United States Attorney General. Pursuant to, *inter alia*, 8 U.S.C. § 1103, he is charged with controlling determination of all issues of law pertaining to immigration and with representing the United States of America in various legal matters.  In addition, as Attorney General he is the person who purportedly made the determination that Petitioner's removal to Italy "is prejudicial to the United States," a matter critical to this Petition.

## STATEMENT OF FACTS

13.    Mr. Mancuso was extradited to the United States from Colombia on May 13, 2008.  He was convicted and sentenced by this Court (see "Exhibit 18" attached to ECF 1).  In proceedings here and in Colombia, he fully admitted responsibility for his crimes, was sentenced and provided full cooperation, despite understanding the severe consequences that would result for both he and his family.  As a result of Mr. Mancuso's testimony and cooperation, more than fifty members of the Colombian Senate were dismissed, charged and/or sentenced, and many other members of the

Colombian Congress and Colombian governors, mayors, councilmen, army generals and members of the police were implicated.  Many of those have been charged and sentenced, and others are currently under investigation, including a former president of Colombia, a current ambassador and other powerful politicians who are eager to silence Petitioner and retaliate against him for his revelations.  Mr. Mancuso's cooperation has triggered a ferocious persecution in Colombia that includes assassination and kidnapping attempts against his family.   As a result, his former wife and youngest child were granted asylum and are now U.S. citizens.  Due to his extensive cooperation, Petitioner has made enemies at the highest levels of power in Colombia, including high-ranking officers of the ruling party and members of the inner circle of the current administration.

14.    At Petitioner's request, undersigned counsel Hector Mora contacted the ICE's Atlanta Field Office on February 11, 2020 to express his desire to cooperate with the removal process and facilitate the execution of an administrative removal order to Italy (see "Exhibit 3" attached to ECF 1). At the same time, undersigned counsel Mora made clear to the ERO/ICE officers that Petitioner fears persecution and torture if returned to Colombia.

15.    Upon the completion of his federal sentence, Mr. Mancuso was transferred from federal custody to ICE custody on March 27, 2020.  At that time, undersigned counsel Mora contacted the ICE Atlanta Field Office in order to facilitate Mr. Mancuso's removal to Italy, of which he is a citizen and where he does not fear persecution and torture. (see "Exhibit 5" attached to ECF 1).

16.     On April 15, 2020 Petitioner was ordered removed to Italy (see "Exhibit 1" attached to ECF 1).   A copy of Mr. Mancuso's Italian passport and information sufficient to prepare a request for an emergency Travel Document were provided to the Italian Consulate.   On behalf of Mr. Mancuso, undersigned counsel Mora communicated with the Italian Consulate in Miami regarding the request for a Travel Document.  The Italian Consulate was prepared to issue a Travel Document without delay (see "Exhibit 7" attached to ECF 1).

17.     Although the Italian Consulate received ICE/ERO's request for a Travel Document on April 23, 2020, it soon became readily apparent that ICE Air Operation was not making arrangements to transport Mr. Mancuso to Italy any time in the near future.   The ICE Atlanta Field Office requested that the Italian Consulate suspend the processing of Mr. Mancuso's Travel Document (see "Exhibit 7" attached to ECF 1) after it concluded security escorts were required and Mr. Mancuso would not be transported within the 30-day validity period of the Travel Document.

18.     Thereafter, Mr. Mancuso's parents communicated their willingness and financial capacity to purchase a one-way ticket to Italy without restriction for him so that the removal order could be effectuated without additional expense to the government of the United States and without further delay. Moreover, when ICE/ERO informed Mr. Mancuso that his removal would require a security escort to Italy, his parents confirmed their ability and willingness to purchase tickets for the two ICE officers that would escort him.  Both offers were rejected (see "Exhibit 8" attached to ECF 1).

19.     As Petitioner's administrative detention approached its third month, Mr. Mancuso requested enrollment in an Alternative to Detention program and an order of supervision that would include safeguards the ERO deemed appropriate and/or necessary on June 10, 2020 (see "Exhibit 8" attached to ECF 1).   As part of that request, Mr. Mancuso provided evidence of the health issues he suffered as result of his COVID-19 infection, as well as other humanitarian considerations and argument to overcome the foreseeable presumption that he represents a danger to the community.  On June 15, 2020 undersigned counsel Mora was informed that Mr. Mancuso's request was denied because "ICE considers Mr. Mancuso to be a threat to public safety due to the nature of his criminal conviction" (Id.).

20.     On June 24, 2020 Mr. Mancuso was transferred to the Robert A. Dayton Detention Center following the filing of a Complaint for Provisional Arrest with a View Towards Extradition in the United States District Court for the Middle District of Georgia, Valdosta Division (Civil Action No. 20-CV-116 (HL)).  At the Government's request, that court later dismissed the Complaint (see "Exhibit 9" attached to ECF 1).   Thereafter, Mr. Mancuso was transferred back to ICE/ERO custody (Irwin County Detention Center) for his removal to Italy to proceed.  His removal remained stalled, however, as the ERO continued to represent that ICE Air Operation still did not have "a route" to transport him to Italy.

21.     Since his release from BOP custody following the completion of his sentence, Petitioner has offered continuous cooperation and made efforts to cause his removal without delay:

| July 27, 2020 | During a conference call with Ms. Alicia Ferra and officer Michael White, ICE Atlanta Field Office affirmed that despite its determination to remove Mr. Mancuso to Italy, a "travel route" was not yet available.  (See "Exhibit 10" attached to ECF 1) |
|---|---|
| July 29, 2020 | Undersigned counsel Mora emailed Ms. Ferra to follow up regarding the removal arrangement. (See "Exhibit 10" attached to ECF 1) |
| July 29, 2020 | Undersigned counsel Mora sent a letter to the ERO Executive Associate Director, Mr. Henry Lucero, requesting he instruct ICE Air Operations to make travel arrangements for Mr. Mancuso without delay. (See "Exhibit 11" attached to ECF 1) |
| July 30, 2020 | Officer Michael D. White emailed undersigned counsel Mora, confirming the situation remained unchanged and despite the efforts of the ICE Atlanta Field Office, transport arrangements for Mr. Mancuso had not been made. (See "Exhibit 10" attached to ECF 1) |
| August 5, 2020 | Undersigned counsel Mora sent a second letter to Mr. Lucero adding information to his earlier request and highlighting the need to instruct ERO/ICE Atlanta Field Office to mail the request for a Travel Document that had yet to be received by the Italian Consulate. (See "Exhibit 11" attached to ECF 1). |
| August 5, 2020 | Undersigned counsel Mora emailed Ms. Ferra and Mr. White, with a copy to the Deputy Field Office Director, Ms. Sullivan (see "Exhibit 12" attached to ECF 1). |

22.    When  undersigned  counsel  Mora  still  had  not  received  any correspondence or verbal confirmation on August 7, 2020 from ERO that a Travel Document request had been mailed or any information evidencing progress by ICE Air Operation to arrange Mr. Mancuso's transport to Italy, he wrote to the Acting

10

Secretary of Homeland Security, Chad E. Wolf and United States Attorney General, William Barr, informing them that the 90-day period to remove Mr. Mancuso had expired and describing the obstacles he had faced in his attempts to obtain assurances from ERO that arrangements for his removal had been made with the urgency the law requires.  (see "Exhibit 13" attached to ECF 1).  Copies of that letter were provided to the United States Attorney for the District of Columbia, the General Counsel for the Department of Homeland Security, the Director of Immigration and Customs Enforcement, and the leadership of Enforcement and Removal Operations (Id.)

23.    Later that afternoon, undersigned counsel Mora received an email from Alicia Ferra confirming a second request for a travel document had been mailed to the Italian Consulate in Miami and informing him, "We have obtained an itinerary for his [Mr. Mancuso's] travel to Italy and will forward it to the Consulate."  This response caused Petitioner to believe ERO, under the leadership of Executive Associate Director Henry Lucero, had instructed divisions under its control to effectuate Mr. Mancuso's removal without delay.  (See "Exhibit 14" attached to ECF 1).

24.    As became later apparent, Ms. Ferra's statements of August 7, 2020 were in direct contradiction with actions undertaken by the Department of State. Despite the expiration of the 90-day period provided under the law to effectuate Mr. Mancuso's removal, according to the President and office of the Attorney General of Colombia, the reason for the delay in Mr. Mancuso's removal to Italy was that the

United States Department of State had been providing them assistance in order to facilitate a new request to extradite him to Colombia.

25.     Colombia's prior attempt to extradite Mr. Mancuso failed when the underlying warrant for his arrest was declared unlawful, baseless and unwarranted in Colombia. The dismissal of the Complaint for Provisional Arrest by the U.S. District Court of the Middle District of Georgia made headlines and revealed the errors made by the Colombian government in its extradition request (see "Exhibit 16" attached to ECF 1).  Removing any notion that Mr. Mancuso was enjoying due process and procedural guarantees in Colombia, on August 7, 2020 President Ivan Duque of Colombia stated in a recorded interview that Colombia was working with the U.S. State Department to find a way, a mechanism, to bring Mr. Mancuso back to Colombia.  In addition, the Public Ministry or Office of Attorney General in Colombia also revealed that the State Department was cooperating with Colombia to facilitate Mr. Mancuso's extradition, despite the absence of a valid arrest warrant in Colombia and the expiration of the permissible period to effectuate Mr. Mancuso's removal. Desperately, the Colombian Government sought any court in Colombia that would issue a new arrest warrant for Mr. Mancuso, without regard to the legality of the allegation or violations of due process needed to obtain it.   This cooperation by the State Department, as well as the pressure applied to ERO/ICE to delay the removal of Mr. Mancuso, supports the urgent need of Petitioner to obtain Mandamus and Injunctive Relief.

26.     Mr. Mancuso has always maintained that there are powerful actors in Colombia that would improperly use the machinations of its government and judicial system in a desperate effort to silence him because of the details he has provided regarding their past involvement with and support of the AUC in Colombia, some of whom are currently prominent officials in the Colombian government.  Mr. Mancuso's continued cooperation poses an   enormous – reinforcing their desire to retaliate against him.

27.     Italy has made it clear they are ready to accept Mr. Mancuso. (See "Exhibit 15" attached to ECF 1.)  Mr. Mancuso received a removal order to Italy. More than ninety days has passed, and yet, Mr. Mancuso was never removed.  The only possible reason for that delay – that the United States government was improperly delaying his removal in an attempt to assist Colombia - was confirmed on August 29, 2020 when ICE notified Mr. Mancuso that the Attorney General of the United States had determined that his removal to Italy was "prejudicial to the United States."  Absolutely no supporting reasons were provided for that determination and Mr. Mancuso was never afforded due process before that determination was made. Moreover, such determination was made well outside the period permitted under the law for Mr. Mancuso's removal.

28.     As Petitioner was unable to resolve this matter through the steps detailed herein, undersigned counsel Mora wrote to the Respondents on August 7, 2020 stating that should Mr. Mancuso's removal to Italy not be swiftly completed, he

would have no choice but to avail himself of civil remedies in this Court (see "Exhibit 13" attached to ECF 1).

29.     As the facts and circumstances detailed herein reveal, there never was a true intention to remove Mr. Mancuso to Italy.  In light of the final administrative order of removal dated April 15, 2020, the expiration of ninety days thereafter, and the invalidity of the notice received on August 29, 2020, given the violation of Mr. Mancuso's constitutional rights to due process and its issuance well outside the period permissible for Mr. Mancuso's removal, Petitioner has sought relief before this Court to compel the Department of Homeland Security, Immigration and Customs Enforcement, and Enforcement and Removal Operations to remove Mr. Mancuso to Italy without further delay.

STATEMENT OF LAW

30.     8 U.S.C. § 1231(a)(1)(A) imposes an obligation upon the Attorney General of the United States, acting in this case through Immigration and Customs Enforcement, to remove a detainee within 90 days:  "…when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days,.."

31.     While the Attorney General has discretion to remove an alien prior to, and within, the 90-day period following the date upon which ICE takes custody of a detainee that has been ordered removed, that discretion does not extend beyond that 90-day period.  8 U.S.C. § 1231(a)(1)(A).  In *Zadvydas v. Davis*, 533 U.S. 678 (2001),

the Supreme Court held substantive due process does not require the Attorney General to act with any particular dispatch ***within*** the 90-day removal period.  In addition, the Court held an extension is implicit in the statute that permits holding a detainee beyond the 90-day period, but for only as long as reasonably necessary to effectuate the logistics of removal.  *Id.* at 682.

32.     Mr. Mancuso maintains the "implicit" extension found by the *Zadvydas* Court does not, in fact, exist.  As the Supreme Court has previously stated regarding statutory construction, "[W]e begin with the understanding Congress 'says in a statute what it means and means in a statute what it says there.'"  *Hartford Underwriters Ins. Co. v. Union Planters Bank*, 530 U.S. 1, 6 (2000) (quoting *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 254 (1992)).  8 U.S.C. § 1231(a)(1)(A) is quite plain and clear:  the Attorney General has a maximum of 90 days to remove an alien after that alien is ordered removed.  The legislative history of that provision is consistent with such a reading.  The predecessor provision, previously codified at 8 U.S.C. § 1252(c), allowed the Attorney General a period of six months to remove an alien with a removal order and provided jurisdiction to the courts to review an alien's detention during that period upon a showing that the Attorney General was "not proceeding with such reasonable dispatch" as the facts and circumstances of the case warranted.  In 1996, Congress decided to shorten the removal period from six months to 90 days and remove any reference to "reasonable dispatch."  When it did so, Congress made the affirmative decision to provide a "hard" deadline for the removal of an alien with a removal order.  It could have included language, as it had before,

that permitted some flexibility and discretion.  It chose not to.  Conversely, Congress considered its newly established 90-day deadline as a per se reasonable and sufficient period of time in which to effect an alien's removal.

33.    In addition, administrative agencies are directed to conclude matters presented to them "within a reasonable time."  *See* Administrative Procedures Act, 5 U.S.C. § 555(b).

34.    Even assuming a "reasonable" extension of the 90-day deadline is a permissible reading of the removal statute, under no authority is an extension of that period permissible for any purpose other than mundane logistical purposes.  Under the facts and circumstances of Mr. Mancuso's case, ERO had more than enough time within the 90-day period in which to effectuate his removal.  The Italian Consulate stood ready to issue his Travel Document and Mr. Mancuso's family was prepared to finance the costs related to his removal.  The delay in his removal, therefore, was not reasonable and not permissible.

35.    Moreover, the statute does not provide authority for the Attorney General to determine that a detainee's country designation is "prejudicial to the United States" outside the 90-day period provided for removal.  Mr. Mancuso maintains that any discretion the Attorney General possesses to make such a determination unequivocally expires at 90 days.  In addition, the failure of the Attorney General to provide a basis for that determination and afford Mr. Mancuso a full and fair hearing on the matter violated his rights to due process and, therefore, rendered the Attorney General's determination invalid.

CLAIMS  FOR  RELIEF

<u>COUNT ONE</u>

Mandamus Action
28 U.S.C. § 1651, 28 U.S.C. § 1361

36.     Petitioner re-alleges and incorporates by reference each and every allegation and statement contained in Paragraphs 13 through 35 as if set forth fully herein.

37.     This claim is brought under 28 U.S.C. § 1651 and 28 U.S.C. § 1361.

38.     Respondents are charged with the mandatory responsibility of administering, implementing and enforcing the Immigration and Nationality Act.

39.     Respondents bear sole responsibility for the timely removal of an alien who has received a final administrative order of removal that is in custody of the Department of Homeland Security awaiting said removal.

40.     Respondents have failed to discharge their mandated duties.

41.     As a result, Petitioner has suffered and continues to suffer irreparable harm and damages entitling him to declaratory, injunctive and other relief.

42.     Petitioner has exhausted all possible administrative remedies and no other adequate remedy exists.

43.     Strong humanitarian and equitable factors favor granting of Mandamus relief.

<u>COUNT TWO</u>

Administrative Procedure Act
Unreasonable Delay, 5 U.S.C. §§ 555(b), 706(1)

44.     Petitioner re-alleges and incorporates by reference each and every allegation and statement contained in Paragraphs 13 through 35 as if set forth fully herein.

45.     Petitioner brings this claim pursuant to 5 U.S.C. § 702, which authorizes judicial review of agency actions or delays.

46.     Respondents have unreasonably delayed Petitioner's removal in violation of 8 U.S.C. § 1231(a)(1)(A) and this Court may compel action under 5 U.S.C. § 706(1).

47.     Petitioner's removal order has been outstanding for more than 90 days, well in excess of the reasonable period Congress afforded the Attorney General to remove an alien, as well as that reasonably necessary to logistically effectuate his removal under the facts alleged herein.

48.     Respondents have failed to discharge a mandatory duty.

49.     As a result of Respondents' failure, Petitioner has suffered and continues to suffer unnecessary detention, irreparable harm, and damages entitling him to declaratory, injunctive and other relief.

## COUNT THREE

Declaratory Judgment Act
28 U.S.C. § 2201

50.     Petitioner re-alleges and incorporates by reference each and every allegation and statement contained in Paragraphs 13 through 35 as if set forth fully herein.

51.     This claim is brought under 28 U.S.C. § 2201.

52.     Petitioner contends that Respondents' actions, decisions and omissions relating to the delay in removing Petitioner are unconstitutional, violate the Immigration and Nationality Act and applicable regulations and are arbitrary and capricious, and seeks a declaration to that effect.

53.     As a result of Respondents' actions and delays, Petitioner has suffered and continues to suffer irreparable harm and damages entitling him to declaratory, injunctive, and other relief.

PRAYER FOR RELIEF

WHEREFORE, Petitioner Salvatore Mancuso Gomez respectfully requests the following relief:

a.      Declaratory and injunctive relief;

b.      An order compelling Respondents to perform their duty to remove Petitioner to Italy without delay, or, in the alternative, to release the Respondent from custody so he can make travel arrangements to depart from the United States to Italy on his own;

c.      Attorneys' fees and costs; and

d.      Such other relief as the Court deems just and appropriate.

Filed this 1st day of September 2020.

Respectfully submitted,

WMR Immigration Law Group, LLC

By:_____

Hector G. Mora, Esq.
District of Colombia Bar #489889
1789 Columbia Road NW, Ste. 200
Washington, D.C.  20009
Ph: (202) 558-6515
HMORA@WMR-LAW.COM


RETURETA  &  WASSEM,  P.L.L.C.

By:_____

Manuel J. Retureta, Esq.
District of Columbia Bar #430006
300 New Jersey Avenue, NW, Suite 900
Washington, D.C.  20001
202.450.6119
MJR@RETURETAWASSEM.COM


/s/  *Joaquin Perez*

_____

Joaquin Perez, Esq.
6780 Coral Way
Miami, Florida  33155
305.261.4000

*Counsel for Petitioner*

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing filing was served upon counsel for all parties via ECF filing on this 1st day of September 2020.

By:_____
Manuel J. Retureta, Esq.