UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SALVATORE MANCUSO GOMEZ, | |
| Petitioner, | Civil Action No.:  20-2250 (RJL) |
| v. | |
| CHAD F. WOLF, Acting Secretary, U.S. Dept. of Homeland Security, et al., | |
| Respondents. | |

**RESPONDENTS' RESPONSE TO MOTION TO VACATE STAY AND**
**<u>PRE-HEARING BRIEF</u>**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................... 1

ARGUMENT .......................................................................................................................... 1

I.    Response to Petitioner's Motion to Vacate Stay................................................... 1

    A.    Respondents Have Been Forthright with the Court and Petitioner ......... 1

    B.    Petitioner Is Currently Subjected to Removal, Not Extradition ............. 4

II.    Petitioner Is Not Entitled to a Temporary Restraining Order ............................ 6

    A.    Standard of Review................................................................................ 6

    B.    Petitioner Is Not Likely to Succeed on the Merits.................................. 7

    C.    The Court Lacks Jurisdiction to Grant the Relief Sought.................... 10

    D.    Petitioner Has Administrative Remedies Available ........................... 10

CONCLUSION..................................................................................................................... 13

Respondents, through undersigned counsel, hereby submit this combined (i) Response to Petitioner's Emergency Motion to Vacate Stay of Proceedings and for An Immediate Hearing on Petitioner's Motion for Temporary Restraining Order ("Motion to Vacate"); and (ii) Pre-Hearing Memorandum advising the Court of some of Respondent's arguments in opposition to Petitioner's request for a Temporary Restraining Order ("TRO").

## INTRODUCTION

The Court should deny Petitioner's Motion to Vacate Stay, which seeks an Order (i) mandating that the United States take the action of immediately removing him to Italy or releasing him so that he can make his own travel arrangements to Italy; and (ii) prohibiting the United States from removing him to any other country, including Colombia.  *First*, Petitioner's claim that Respondents misled him or the Court are baseless.  Respondents repeatedly informed Petitioner (including in a document filed with the Court) that Petitioner's country of removal could be changed.  *Second*, Petitioner's argument that extradition is improper is misplaced because Petitioner appears to conflate removal with extradition.  Petitioner is currently scheduled for removal — not extradition.  *Third*, Petitioner is not likely to succeed on the merits of his claims because (1) his period of detention is presumptively reasonable and reasonable efforts are being made to remove him; (2) his arguments regarding extradition are misplaced as he is not being extradited; (3) 8 U.S.C. § 1252(g) strips this Court of jurisdiction to consider Petitioner's request; and (4) Petitioner has not exhausted his administrative remedies.

## ARGUMENT

I. **RESPONSE TO PETITIONER'S MOTION TO VACATE STAY**

   A. **Respondents Have Been Forthright with the Court and Petitioner**

Contrary to Petitioner's accusations in his Motion to Vacate Stay of Proceedings [ECF No. 13], neither Respondents nor their counsel have misled the Court or Petitioner.  Prior to the

August 24, 2020, hearing, Respondents were clear that, at that time, Petitioner was scheduled to be removed to Italy no later than September 4, 2020, and a date certain had been set for his removal to Italy.[1]  No representation was made at that time or any other that Petitioner's country of removal could not be changed.  Indeed, it is always possible that a country of removal will be changed.  Petitioner then suggested that the parties file a document with the Court advising it that Respondents had informed Petitioner that he was scheduled to be removed to Italy no later than September 4, 2020.  Petitioner prepared the first draft of the proposed order that was submitted to the Court on August 24, 2020, prior to the hearing.

In its revisions to the draft document and conversations regarding the revisions, Respondents made clear that Petitioner was then "currently scheduled" to be removed to Italy by September 4, 2020, but Respondents left open the possibility that a change might occur, insisting that the proposed order contain the language that "should a decision be made to remove Petitioner to another country, he would be provided at least 14 days' advance notice."  Petitioner agreed to this language.  This language clearly indicated that Petitioner may not be removed to Italy by September 4, 2020, but may instead be removed "to another country," and that such a change could be due to a "decision" by Respondents.  If it were not possible that Respondents would change the country of designation, there would be no reason to include this language.

During the August 24, 2020, hearing, in response to the Court's question of whether "this is all going to be done by [September] 4th supposedly," Respondents responded affirmatively because, at the time of the hearing, Petitioner was still scheduled to be removed to Italy no later

---

[1] The exact date of planned removal was not disclosed publicly or to Petitioner for security reasons, but Respondents had advised undersigned counsel of the specific date Petitioner was scheduled to be removed to Italy.

than September 4, 2020.  That was an accurate characterization of the situation at the time because no decision had been made whether to change Petitioner's country of removal.

Since the August 24, 2020, hearing, Respondents have continued to be straightforward with Petitioner about the status of Petitioner's removal to Italy.  Notably, on August 27, 2020, Petitioner inquired of Respondents whether "Mr. Mancuso's removal to Italy continues to be in place and moving forward," and he noted that the "question [was] spurred because [they] ha[d] received information . . . telling [them] that the US government is actively engaged in assisting, and coordinating with, Colombia's effort to extradite Mr. Mancuso."  Petitioner asserted that, if Respondents were taking such actions, this would be "inconsistent with [Petitioner's] understanding of [the parties'] agreements, and representations to [the Court]."  Respondents were truthful and unequivocal in their response that Petitioner was still scheduled to be removed but that removal to Italy was not certain.  Respondents' email stated, in relevant part:

> Neither my clients nor I have done anything to mislead you or the Court.  To be clear, our representation to you and the Court was that: "Petitioner is currently scheduled to be removed from the United States to Italy . . . no later than Friday, September 4, 2020; and . . . that should a decision be made to remove Petitioner to another country, Petitioner would be provided at least 14 days advance notice."  Those representations were and remain true.
>
> Mr. Mancuso is still currently scheduled for removal to Italy no later than September 4, 2020.  No representation was made or is being made regarding the existence or non-existence of communications inside the US government or with other countries regarding removal or extradition.  Until an alien is removed, it is always possible that a change will be made.  Accordingly, we did not and would not represent that no change is possible.   As we previously said, should a decision be made to remove Mr. Mancuso to another country, he will be provided at least 14 days advance notice.

Def's Ex. 1 (8/27/2020 Email).  Notably, Respondents twice noted that a decision could be made to remove Petitioner to another country and emphasized that no representations had been or were

3

being made to the contrary. It also reiterated that "it is always possible that a change [to the country of removal] will be made."

On Friday, August 28, 2020, Petitioner again contacted Respondents asking for a status update because Petitioner had been moved to another holding facility. Because Petitioner was still scheduled for removal to Italy at that time, Respondents again responded truthfully that "[a]ll representations made were and are true. As we previously said, should a decision be made to remove Mr. Mancuso to another country, he will be provided at least 14 days advance notice." Again, reiterating and reminding Petitioner that his country of removal could be changed.

On Saturday, August 29, 2020, the Acting Secretary of Homeland Security made a determination that removal of Petitioner to Italy would be "prejudicial to the United States" under 8 USC § 1231(b)(2)(C)(iv), and that his removal to Italy—which had previously been scheduled for the following day—would no longer take place. Petitioner and his counsel were both served with a Notice of Change of Country of Removal ("Notice of Change") on August 29, 2020.

These facts reflect that neither Respondents nor their counsel misled the Court or Petitioner or otherwise make disingenuous representations.

## B.  Petitioner Is Currently Subjected to Removal, Not Extradition

Petitioner's Motion to Vacate appears to conflate removal to Colombia with extradition to Colombia. The Notice of Change that Petitioner was served on August 29, 2020, relates to his return to Colombia through the immigration process, not his return to Colombia through extradition. Immigration proceedings and extradition proceedings are fundamentally "separate and independent" from each other. Noeller v. Wojdylo, 922 F.3d 797, 809 (7th Cir. 2019); Barapind v. Reno, 225 F.3d 1100, 1106 (9th Cir. 2000) (same); Matter of McMullen, 17 I&N Dec. 542, 548 (B.I.A. 1980) (same); see also Sandhu v. Reno, No. 96-5245, 1996 U.S. App. LEXIS 24130, at *3 (D.C. Cir. Aug. 9, 1996) (noting that "there is legal precedent for the government's

4

claim that extradition and asylum proceedings are separate proceedings"). The proceedings originate from different sources of authority, are driven by different goals, and involve entirely separate procedures. Extradition proceedings address the return of fugitives to face trial or serve time for serious crimes charged by a separate sovereign and are governed by the applicable treaty between the United States and the state requesting extradition, the extradition statute contained in 18 U.S.C. § 3181 et seq., and the case law developed thereunder. Immigration proceedings, on the other hand, address the removal of aliens from the United States pursuant to the Immigration and Nationality Act. Additionally, while the U.S. Secretary of State makes a final decision with respect to extradition, see 18 U.S.C. § 3186, immigration decisions fall within the purview of the Attorney General and the Secretary of the Department of Homeland Security, see, e.g., 8 U.S.C. § 1103.

Thus, even if the "United States and Colombian government officials took advantage of the stay of proceedings to actively assist Colombia in a last-ditch effort to resuscitate [Colombia's] previously failed extradition request," as Petitioner alleges (Mot. at 6), Petitioner was not affected by any such efforts, because the United States has not moved forward with any new or resuscitated extradition attempt. Further, working with Colombia to perfect any request for Mancuso's extradition could only have resulted in Petitioner's arrest for purposes of extradition pursuant to the federal extradition statute, 18 U.S.C. § 3184, which did not happen, and not his designation for removal to Colombia, which did happen.

Additionally, while Petitioner's Motion (at 5) complains that the Notice of Change "did not reference an arrest warrant, nor an extradition warrant, from Colombia," this is irrelevant. Although Mancuso's extradition to Colombia would require the existence of certain documents from criminal proceedings in Colombia, see Extradition Treaty with the Republic of Colombia,

5

art. 9, U.S.-Colom., Sept. 14, 1979, S. Treaty Doc. No. 97-8 (1981)), there is no similar requirement for Mancuso's removal to Colombia.

## II.     PETITIONER IS NOT ENTITLED TO A TEMPORARY RESTRAINING ORDER[2]

### A.     **Standard of Review**

A temporary restraining order "is an extraordinary, if not drastic, remedy." Nat'l Treasury Emps. Union v. United States, Civ. A. No. 19-51, 2019 WL 266381, at *2 (D.D.C. Jan. 18, 2019). It is "reserved for cases where Petitioners will suffer irreparable injury before a preliminary injunction hearing is even held." Id. "An application for a TRO is analyzed using factors applicable to preliminary injunctive relief." Dunlap v. Presidential Advisory Comm'n on Election Integrity, 319 F. Supp. 3d 70, 81 (D.D.C. 2018).

To obtain a preliminary injunction, the movant must establish:

(1) that it has a strong likelihood of success on the merits, (2) that it will suffer irreparable injury if injunctive relief is denied, (3) that other interested parties will not suffer substantial harm if injunctive relief is granted, and (4) that the public interest favors the granting of injunctive relief, (or at least, that the granting of injunctive relief is not adverse to the public interest).

Paleteria La Michoacana, Inc., et al. v. Productos Lacteos Tocumbo S.A. de C.V., 901 F. Supp. 2d 54, 56 (D.D.C. 2012) (citing Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc., 559 F.2d 841, 843 (D.C. Cir. 1977)). "This remedy should only be granted if the party that moves for a preliminary injunction makes 'a clear showing that [the] four factors, taken together, warrant relief.'" Proctor v. District of Columbia, 310 F. Supp. 3d 107, 113 (D.D.C. 2018) (quoting League of Women Voters of the U.S. v. Newby, 838 F.3d 1, 6 (D.C. Cir. 2016)).

---

[2]     Respondents respectfully reserve the right to present additional and more fully developed arguments during the hearing on Plaintiff's motion, including (but not limited to) addressing all four factors of the temporary restraining order analysis. Given the limited time involved with TROs, Respondents are unable to fully brief every issue.

Before the Supreme Court's decision in Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7 (2008), "courts weighed these factors on a 'sliding scale,' allowing 'an unusually strong showing on one of the factors' to overcome a weaker showing on another." Damus v. Nielsen, Civ. A. No. 18-0578 (JEB), 2018 WL 3232515, at *4 (D.D.C. July 2, 2018) (quoting Davis v. PBGC, 571 F.3d 1288, 1291-92 (D.C. Cir. 2009)).  This Circuit has suggested, without deciding, that Winter "should be read to abandon the sliding-scale analysis in favor of a 'more demanding burden' requiring Plaintiffs to independently demonstrate both a likelihood of success on the merits and irreparable harm." Bartko v. Dep't of Justice, Civ. A. No. 13-1135 (JEB), 2015 WL 13673371, at *1 (D.D.C. Mar. 12, 2015) (citing Sherley v. Sebelius, 644 F.3d 388, 392-93 (D.C. Cir. 2011), and Davis, 571 F.3d at 1292).

Significantly, where, as here, "an injunction is mandatory – that is, where its terms would alter, rather than preserve, the status quo by commanding some positive act – the moving party must meet a higher standard than in the ordinary case by showing clearly that he or she is entitled to relief or that extreme or very serious damage will result from the denial of the injunction." Columbia Hosp. for Women Found., Inc. v. Bank of Tokyo-Mitsubishi Ltd., 15 F. Supp. 2d 1, 4 (D.D.C. 1997) (internal quotation marks omitted)), aff'd, 159 F.3d 636 (D.C. Cir. 1998); see also Paleteria La Michoacana, 901 F. Supp. 2d at 56-57 ("If the requested relief "would alter, not preserve, the status quo," the court must subject the Petitioner's claim to a somewhat higher standard.  Petitioners seeking this type of relief therefore face "an additional hurdle" when proving their entitlement to relief." (internal citations omitted)).  Petitioner cannot meet this high burden. As such, the Court should deny the motion for a TRO.

### B. Petitioner Is Not Likely to Succeed on the Merits

Petitioner seeks an Order from this Court (i) mandating that the United States take the action of immediately removing him to Italy or releasing him so that he can make his own travel

arrangements to Italy; and (ii) prohibiting the United States from removing him to any other country, including Colombia. ECF No. 1 at 20 (Compl.); ECF No 6 at 3 (Pl's App. for TRO). Petitioner is not entitled to the relief sought.

### 1.     Request for Order Mandating Immediate Release or Removal to Italy

Petitioner's primary argument seeking removal to Italy or release from custody is that he has been detained longer than the 90-day period allotted in 8 U.S.C. § 1231(a)(1), which instructs that

> Except as otherwise provided in this section, when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the "removal period").

Petitioner ignores that 8 U.S.C. § 1231(a)(6) and Supreme Court precedent permit the continued detention of removable aliens – including Petitioner – for a reasonable period needed to effect their removal. Section 1231(a)(6) of the Immigration and Nationality Act as amended ("INA"), which applies to "[i]nadmissible or criminal aliens," instructs that:

> An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

It is undisputed that Petitioner is "deportable as an alien convicted of an aggravated felony pursuant to section 237(a)(2)(A)(iii) of the [INA], 8 U.S.C. 1227(a)(2)(A)(iii)." See Def's Ex. 2 (Pl's Order of Removal, dated 4/15/2020). Thus, pursuant to the plain language of INA Section 1231(a)(6), he can be detained beyond the removal period.

In Zadvydas v. Davis, 533 U.S. 678 (2001), the U.S. Supreme Court held that an alien who is subject to removal for commission of aggravated felonies can be detained beyond the 90-day removal period for the reasonable period of time that it takes to effect his removal, and that anything falling within a six-month period from the date of the Order of Removal is considered

8

presumptively reasonable as long as reasonable efforts are being made to remove the alien. Id. at 700-01. In Clark v. Martinez, 543 U.S. 371 (2005), the Supreme Court reiterated this six-month presumptive reasonableness standard and expanded its application to all classes of alien falling within the purview of Section 1231(a)(6), regardless of whether those aliens have been admitted to the country. Id. at 380-381.

Petitioner's Pre-Hearing Memorandum [ECF No. 10] argues that "[t]oday, Mr. Mancuso faces a period of indefinite detention," (Memo. at 4), but this simply is not the case and he can point to no evidence in support of this assertion. Indeed, the same Pre-Hearing Memorandum (at 3) has calculated the time that Petitioner has been detained and, as of the filing of this brief and taking into account the tolling of the number of days of removal that occurred during extradition proceedings, Petitioner will have been detained only 18 days beyond the 90-day time set in INA Section 1231(a)(1). Moreover, the events of the last several days reflect that removal efforts are underway. Indeed, the delay at this point is not caused by Respondents but by Plaintiff's own actions in seeking to contest his removal to Colombia. As previously noted, Petitioner was originally slated to be removed to Italy no later than September 4, 2020. Petitioner was notified on August 29, 2020, that the Acting Secretary of Homeland Security has determined that Petitioner should instead be removed to Colombia. It is clear from these actions that reasonable steps are being taken to remove Petitioner; thus, any argument that he is subject to indefinite detention is simply not credible. Petitioner should not be allowed to benefit from his own decision to contest removal to Colombia.

### 2. Request for Order Prohibiting Removal to Any Other Country, Including Colombia

Neither Petitioner's Complaint, Pre-Hearing Memorandum, nor Motion to Vacate articulate a basis for issuance of an Order prohibiting removal to another country, including

9

Colombia. The only argument put forth in this regard is Petitioner's assertion that Petitioner should not be subject to going to Colombia because the Colombian government has not produced a proper extradition request or arrest warrant. See Mot. to Vacate at 5; Pre-Hearing Memo. at 6-7, 9. As previously noted, however, Petitioner is being removed to Colombia through the immigration process, not as part of an extradition request; thus, no extradition request or arrest warrant is necessary.

### C. The Court Lacks Jurisdiction to Grant the Relief Sought

This Court lacks jurisdiction to consider Petitioner's request for an Order mandating his immediate removal to Italy and prohibiting removal to another country. In relevant part, 8 U.S.C. § 1252(g) states:

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g) (emphasis added). Petitioner's removal is being executed pursuant to 8 U.S.C. § 1231, which is part of 8 U.S.C. Chapter 12—the chapter identified in 8 U.S.C. § 1252. Petitioner's request that the Court mandate the country and timing of his removal falls squarely within the type of action that § 1252(g) bars from judicial review. See Duamutef v. INS, 386 F.3d 172, 180-81 (2d Cir. 2004) (affirming jurisdictional bar on review of alien's claim seeking to force government to execute deportation order).

### D. Petitioner Has Administrative Remedies Available

To the extent that Petitioner will now argue that a TRO or preliminary injunction is necessary to prevent his immediate removal to Colombia, this is inaccurate because Petitioner will not be removed to Columbia until he has exhausted his administrative right to seek withholding or

deferral of removal, i.e., to seek review of the Acting Secretary's decision.  Petitioner is subject to an administrative final order of removal issued pursuant to 8 U.S.C. § 1228(b).  Aliens subject to an administrative final order pursuant to 8 U.S.C. § 1228(b) are able to seek withholding of removal from the designated country of removal.  See 8 U.S.C. § 1228(f)(3).  On August 29, 2020, Immigration and Customs Enforcement ("ICE") served Petitioner and his counsel with the Notice of Change, which informed him that he will be processed for removal to Colombia, subject to any timely claim for withholding of removal that he wishes to make.  8 C.F.R. § 238.1(c).  During this process, Petitioner was affirmatively advised that he may request withholding of removal to a particular country if he fears persecution or torture in that country.  8 C.F.R. § 238.1(c)(1).  Should an alien indicate such a fear, he would be referred to an asylum officer from U.S. Citizenship and Immigration Services ("USCIS") for a reasonable fear determination in accordance with federal regulations.  Id. §§ 238.1(f)(3), 208.31.

If the asylum officer were to determine that such alien does not have a reasonable fear of persecution or torture in the country designated for removal, the alien may request review of that determination by an immigration judge.  Id. § 208.31(g).  In this context, the immigration judge's concurrence with a negative fear determination is final and no appeal right exists.  Id; see also United States v. Thuraissigiam, 140 S. Ct. 1959, 1983 (2020) (bar on judicial review of negative fear determinations in expedited removal proceedings, combined with the limitations on habeas review in 8 U.S.C. § 1252(e)(2), do not violate the Suspension Clause).  If the immigration judge concurs with the determination by USCIS that an alien has failed to establish a reasonable fear, the case is returned to the Department of Homeland Security for execution of the removal order, and no administrative appeal is available.  Id. § 1208.31(g)(1).

In contrast, if the asylum officer were to determine that such alien has a reasonable fear of persecution or torture in the country designated for removal, or if the immigration judge disagrees with a negative reasonable fear determination, such alien is referred for withholding-only proceedings under 8 U.S.C. § 1231(b)(3) or protection under the Convention Against Torture ("CAT"). 8 C.F.R. §§ 208.31(e), 1208.16(c). If such alien is barred from withholding of removal under 8 U.S.C. § 1231(b)(3)(B), he may still apply for deferral of removal under the CAT. 8 C.F.R. § 1208.17(b). In withholding-only proceedings, the immigration judge's jurisdiction is limited to a determination of whether the alien is eligible for statutory withholding or withholding or deferral of removal under the CAT. Id. § 1208.2(c)(3)(i). Throughout these proceedings, "parties are prohibited from raising or considering any other issues, including but not limited to issues of admissibility, deportability, eligibility for waivers, and eligibility for any other form of relief." Id.

If the immigration judge denies withholding of removal or deferral of removal under CAT, an alien may seek review of the immigration judge's decision with the Board of Immigration Appeals. See 8 C.F.R. § 1208.31(g)(2). If the Board of Immigration Appeals ("BIA") affirms that denial, the alien may file a petition for review with the appropriate circuit court within 30 days of any BIA decision. 8 U.S.C. § 1252. In this case, the U.S. Court of Appeals for the Eleventh Circuit would have proper jurisdiction over any petition for review challenging such a denial, because Mr. Mancuso's administrative removal order was issued in Georgia, he has been detained in ICE custody in Georgia, and any referral or review of a reasonable fear determination would go before an immigration judge in the Atlanta area. See 8 U.S.C. § 1252(b)(2); 8 C.F.R. § 1208.31(e), (g).

## **CONCLUSION**

For the foregoing reasons, Respondents respectfully request that the Court deny Petitioner's Motion for Temporary Restraining Order.

Dated: September 1, 2020          Respectfully submitted,

> MICHAEL R. SHERWIN
> United States Attorney
>
> DANIEL F. VANHORN, D.C. Bar No. 924092
> Chief, Civil Division
>
> By: /s/ April Denise Seabrook
> APRIL DENISE SEABROOK, D.C. Bar No. 993730
> Assistant United States Attorney
> 555 Fourth Street, N.W.
> Washington, D.C. 20530
> Phone: 202-252-2525
> April.Seabrook@usdoj.gov