UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SALVATORE MANCUSO GOMEZ,  )<br>  )<br>Petitioner,  )<br>  )<br>v.  )<br>  )<br>CHAD F. WOLF, Acting Secretary of  )<br>Homeland Security, et al.,  )<br>  )<br>Respondents.  )<br>  ) | Civil Action No. 20-2250 (RJL) |

## JOINT STATUS REPORT

Pursuant to the Court's order of September 2, 2020, the parties respectfully submit the following joint status report regarding Mr. Mancuso's administrative process.

## BACKGROUND

On March 27, 2020, Mr. Mancuso completed his term of federal imprisonment and was transferred to the custody of U.S. Immigration and Customs Enforcement ("ICE") for removal from the United States. At that time, counsel advised the Respondents that Mr. Mancuso feared torture, persecution and/or assassination should he be removed to Colombia, that Mr. Mancuso had executed an Application for Asylum and Withholding of Removal (Form I-589), and that he consented to removal to Italy, of which country he is also a citizen. See ECF No. 1, Ex. 5. On April 15, 2020, ICE issued an administrative removal order whereby Mr. Mancuso was ordered removed to Italy. See ECF No. 1, Exhibit 1.

Mr. Mancuso filed a petition for writ of mandamus on August 17, 2020, challenging the timeliness of his removal to Italy. ECF No. 1. The following day, he filed a motion for a temporary restraining order ("TRO") and injunctive relief. ECF No. 6. The Court stayed that motion on August 24, 2020 because the parties expected Mr. Mancuso's removal to Italy to occur on or before September 4, 2020. ECF No. 11.

On August 29, 2020, Acting Secretary of Homeland Security Chad Wolf ("Acting Secretary Wolf") determined that removing Mr. Mancuso to Italy would be "prejudicial to the United States" and changed his country of removal to Colombia. See ECF No. 15 at 6. Subsequently, Mr. Mancuso renewed his request for a "reasonable fear interview" ("RFI") and reiterated to Respondents that he feared death, torture, or persecution were he removed to Colombia  In addition, he filed a motion with the Court to lift the stay and for a hearing on the merits of his TRO motion. See ECF No. 13. At the hearing on September 2, 2020, the Court denied Mr. Mancuso's motion for TRO and ordered the parties to file a status report, preferably jointly, within two weeks to inform it of the progress of the administrative process.

## **JOINT CLARIFICATION**

At the September 2, 2020, hearing, the Court asked whether Mr. Mancuso would be afforded an opportunity to seek federal judicial review of the decision made at the end of the administrative process. (Tr. at 23-31; Sept. 2, 2020). At the time, the Court was left with the assurance that Mr. Mancuso would have the opportunity to appeal any finding by an immigration judge that he does not have a reasonable fear of persecution or torture to a federal court of appeals. (Tr. at 31; Sept. 2, 2020).

That is not the case, and the parties seek to correct the record. The right to appeal is dependent upon the finding of the immigration judge. To ensure clarity, a summary of the process is included below.

After the reasonable fear interview is conducted, an asylum officer determines whether the alien has established that he has a reasonable fear of persecution or torture in the country designated for removal. If the asylum officer were to determine that such alien does <u>not</u> have a reasonable fear of persecution or torture, the alien may request review of that determination by an immigration judge. 8 C.F.R. § 208.31(g). If the immigration judge concurs with the determination by U.S. Citizenship and Immigration Services that an alien has failed to establish a reasonable fear, the case is returned to the Department of Homeland Security for execution of the removal order, and no administrative appeal is available. <u>Id.</u> § 208.31(g)(1).

In contrast, if the asylum officer were to determine that such alien <u>does</u> have a reasonable fear of persecution or torture in the country designated for removal <u>or</u> if the immigration judge disagrees with an asylum officer's determination that a reasonable fear does <u>not</u> exist, the alien is referred for withholding-only proceedings under 8 U.S.C. § 1231(b)(3). 8 C.F.R. § 208.31(e). In such proceedings, the immigration judge will also consider the alien's application for protection under the Convention Against Torture ("CAT"). <u>See</u> 8 C.F.R. §§ 1208.16(c), 1208.17. If the immigration judge denies statutory withholding of removal or withholding or deferral of removal under CAT, then an alien may seek review of the immigration judge's

decision with the Board of Immigration Appeals ("BIA"). See 8 C.F.R. § 1208.31(g)(2)(ii). If the BIA affirms that denial, then the alien may file a petition for review with the appropriate circuit court within 30 days of any BIA decision. 8 U.S.C. § 1252. In this case, the U.S. Court of Appeals for the Eleventh Circuit would have proper jurisdiction over any petition for review challenging such a denial because Mr. Mancuso's administrative removal order was issued in Georgia, he has been detained in ICE custody in Georgia, and any referral or review of a reasonable fear determination would go before an immigration judge in the Atlanta area. See 8 U.S.C. § 1252(b)(2); 8 C.F.R. § 1208.31(e), (g).

## PETITIONER'S STATEMENT

*Right to Appeal*

In order to ensure the Court was appropriately apprised of Mr. Mancuso's right to appeal, the parties corrected the record above. Mr. Mancuso would like to make one thing abundantly clear: in the event that both the asylum officer conducting his RFI and an immigration judge agree that he does not have a reasonable fear of persecution or torture in Colombia, he does not have an appeal as of right to a federal court. In that event, it is possible that he would be removed to Colombia immediately.

*Respondents' Failed to Conduct Timely Reasonable Fear Interview*

Mr. Mancuso plainly and clearly requested a RFI on March 27, 2020, notifying Respondents that he feared assassination, torture or persecution if removed to Colombia. He made the formal request to ICE. Thereafter, Respondents issued an administrative order of removal directing Mr. Mancuso be removed to Italy. The

issuance of that order, however, did not relieve Respondents of their responsibility to refer Mr. Mancuso for a RFI regarding removal to Colombia immediately following his request on March 27, 2020 in the absence of a decision to waive the RFI screening requirement altogether.  See 8 C.F.R. § 208.31.

As the Court is well aware, on the day prior to Mr. Mancuso's scheduled removal to Italy, Respondents abruptly notified Mr. Mancuso he would be removed to Colombia, not Italy.  Specifically, Acting Secretary Wolf determined that Mr. Mancuso's removal to Italy would be "prejudicial to the United States" and changed his country of removal to Colombia.  See ECF No. 15 at 6.  No circumstance or material fact has changed since April 15, 2020, so as to justify a sudden change to Mr. Mancuso's country of removal after months of unjustified incarceration.  Mr. Mancuso maintains Respondents never truly intended to remove him to Italy.

Whether they did or not, however, one fact is very clear:  Respondent ICE was required to refer Mr. Mancuso to the asylum office for a RFI within ten days of March 27, 2020, in light of his stated, reasonable fear of death, torture and/or persecution were he removed to Colombia.  Respondents chose to ignore that requirement, which resulted in additional five months of incarceration and a level of publicity in Colombia and the United States that has further increased the likelihood of assassination, torture, and/or persecution in Colombia of not only Mr. Mancuso, but also of members of his immediate family.

Upon receiving Acting Secretary Wolf's notice that his country of removal had been changed,[1] Mr. Mancuso once again renewed his request for a RFI. Finally, he was referred as required. The RFI occurred over a period of more than 20 hours spread over several days (September 9, 2020, September 11, 2020, September 15, 2020 and September 16, 2020). It concluded this morning.

In light of the events detailed below, Mr. Mancuso respectfully requests this Court's intervention. The administrative process has been so compromised as to violate Mr. Mancuso's rights to due process. Moreover, a federal court has recently determined that Mr. Wolf's appointment as Acting Secretary of Homeland Security is invalid and he is acting without the benefit of legal authority.

*Deficiency of Administrative Process*

At the September 2, 2020 hearing, the Court expressed concern about injecting itself into an administrative matter prior to the exhaustion of administrative remedies. Mr. Mancuso submits that the deficiencies of the administrative process provided to him have risen to an unconstitutional level and, quite simply, the process has failed. Specifically:

1. RFI Request – As set forth above, Respondents ignored their responsibility to refer Mr. Mancuso for a RFI in a timely manner. Their delay is notable not only for the fact that it occurred, but also for its length – more than five months after the time permitted. Mr. Mancuso suspects this delay was designed to afford Colombia time to work through diplomatic and other channels to secure Mr. Mancuso's removal to that country. Mr. Mancuso submits that when he

---

[1] As set forth below, Mr. Mancuso maintains that Mr. Wolf acted without legal authority, and therefore the notice provided is without force and effect.

sought intervention from this Court to mandate his removal in accordance with the order issued on April 15, 2020, Respondents became sensitive to the possibility of judicial review of its actions. As a result, it had no choice but to refer Mr. Mancuso for a RFI when he once again renewed his request following the change to his country of removal. That eventual referral, however, does not absolve Respondents of their failure to proceed with the interview within days of the request, which resulted in an extended and unjustified period of incarceration and increased the risk to Mr. Mancuso and his family of death, torture or persecution due to the publicity his case has garnered in Colombia.

2. Confidentiality - Due to the very nature of the subject matter discussed, RFIs are required to be confidential. Despite that very clear requirement, the confidentiality of the proceedings was violated when an ICE official entered Mr. Mancuso's interview room DURING his RFI to request he sign pro forma paperwork related to a custody review conducted every 180 days, a matter wholly unrelated to the RFI. In addition, despite the clear mandates set forth in 8 C.F.R. § 208.6, the asylum officer conducting Mr. Mancuso's RFI initially refused to guarantee his testimony would be kept confidential. It was only after Mr. Mancuso's immigration counsel refused to proceed without assurances that there would be full compliance with the regulations, did the officer finally capitulate. Moreover, the asylum officer never disclosed the exceptions and procedures for sharing testimony, or parts thereof, with a foreign country. Despite immigration counsel's direct inquiry to the asylum officer, the officer never apprised Mr. Mancuso of the risks arising from the discretion 8 C.F.R. § 208.6 affords the Attorney General to share information with Colombia without his consent.

3. Technical issues – Deficiencies in communication of the virtual meeting caused an extensive delay of more than several hours in the RFI and threatens the integrity and continuity of the record.

4. Interpretation Issues – The quality of the interpretation during the RFI threatens the integrity of the record. Immigration counsel has had to correct

the interpreter on numerous occasions during the RFI regarding the translation of important portions of Mr. Mancuso's testimony. In addition, despite Mr. Mancuso's inability to speak or understand the English language, the asylum officer attempted to proceed with the RFI when Mr. Mancuso's hearing loss in both ears made it impossible for him to hear the interpreter due to the quality of the audio during the virtual meeting.

5. Asylum Officer Bias – As a result of numerous instances of bias against Mr. Mancuso and his immigration counsel that infected his RFI, removal of the asylum officer who conducted the vast majority (approximately 90%) of the RFI was requested last night. The request was supported on several bases, including the officer's reliance upon unreliable "research."

Throughout the course of testimony, the asylum officer conducting the RFI repeatedly stated that "research shows" various facts intended to undermine Mr. Mancuso's reasonable fear, without providing that research to his immigration counsel. Mr. Mancuso's immigration counsel requested she be provided such "research," and the asylum officer responded it was "open source material" available to DHS. Specifically, the officer indicated he is relying upon general media reports from the internet, not expert opinion, to determine whether any specific danger to Mr. Mancuso has subsided.

The media reports upon which the officer intends to rely do not discuss whether the former paramilitaries detailed therein provided critical information regarding members of the Colombian government and military that lead to investigations and, in some instances, arrests, as is the case with Mr. Mancuso. As a result, the officer's reliance upon those media accounts of the treatment of others to determine whether Mr. Mancuso is credible when discussing his personal, reasonable fear of assassination, torture or persecution upon his return to Colombia violates Mr. Mancuso's rights to due process. See Petitioner's Request for Removal of Asylum Officer attached hereto as an exhibit.

Early this morning, Mr. Mancuso's request for removal of the asylum officer was granted and a new officer was assigned to complete the few remaining hours of the RFI.

*Lack of Authority To Change Removal Country/Recent Federal Court Opinion*

To be clear, Mr. Mancuso is not requesting the Court review the reasons underlying a decision by the Executive branch that removal to a certain country is prejudicial to the interests of the United States. Mr. Mancuso's issues are purely legal and constitutional ones.[2]

As Mr. Mancuso argued before the Court on September 2, 2020, Acting Secretary Wolf lacked legal authority on two bases to determine that Mr. Mancuso's removal to Italy would be "prejudicial to the United States." See, e.g., ECF No. 16 at 2-3; Tr. at 6-7, 14, 20, 35 (September 2, 2020). First, the Attorney General alone is vested with the authority to disregard the country designated by an alien for removal under specific, limited circumstances. 8 U.S.C § 1231(b)(2)(C). In clear contravention of that statutory limitation, Acting Secretary Wolf exercised the Attorney General's authority to determine that Mr. Mancuso's removal to Italy would be "prejudicial to the United States" pursuant to 8 U.S.C. § 1231(b)(2)(C)(iv).

Mr. Mancuso submits that in the absence of action by the Attorney General, the change of his country of removal from Italy to Colombia must be set aside because it lacks authority and is not in accordance with the law. See 5 U.S.C. § 706. Moreover,

---

[2] In addition to his argument that Acting Secretary Wolf lacked legal authority discussed more fully herein, Mr. Mancuso has also raised whether he has been afforded due process and whether the change to his country of removal was timely.

Mr. Mancuso maintains that even were *a* Secretary of Homeland Security empowered to invoke 8 U.S.C. § 1231(b)(2)(C)(iv), Acting Secretary Wolf lacked any legal authority to do so as a result of the invalidity of his appointment, and, therefore, his determination is not legally valid and lacks force and effect.

Within the last few days, the United States District Court for the District of Maryland issued a significant and relevant decision in *Casa de Maryland v. Chad F. Wolf, et al.* (2020 WL 5500165 (September 11, 2020)).[3] In that memorandum opinion, the court preliminarily enjoined the respondents therein from enforcing rules promulgated by Acting Secretary Wolf because he lacked any legal authority due to the invalidity of his appointment. Specifically, the court concluded the plaintiffs therein were likely to demonstrate Acting Secretary Wolf's appointment was invalid under the Department of Homeland Security's applicable order of succession and, therefore, he filled the role of Acting Secretary without authority. As a result, the court found Acting Secretary Wolf had promulgated the rules at issue "'in excess of…authority' and not 'in accordance with the law.'" *Id*. at *23. Recognizing its "mandatory obligation to set aside unlawful agency action under" 5 U.S.C. § 706 (2)(A) and (2)(C), the court determined some of the plaintiffs in that matter had established their likely success on the merits and issued the requested preliminary injunction. *See Casa de Maryland,* 2020 WL 5500165 at *13, 23.

Likewise, Mr. Wolf determined Mr. Mancuso's removal to Italy would be "prejudicial to the United States" in excess of his authority and not in accordance

---

[3] Case No. 20-cv-02118-PX, ECF No. 69 (Greenbelt Division).

with the law, as he filled the role of Acting Secretary without legal authority. Therefore, even were *a* Secretary of Homeland Security endowed with the authority invoked in Mr. Mancuso's case, Acting Secretary Wolf's exercise of any such purported authority must be set aside as unlawful due to the invalidity of his appointment pursuant to 5 U.S.C. § 706.

Mr. Mancuso maintains this Court has jurisdiction pursuant to 5 U.S.C. § 703 to set aside Acting Secretary Wolf's action changing Mr. Mancuso's country of removal. Moreover, as no administrative remedy is available to address the legal deficiency about which Mr. Mancuso complains, it is not necessary to await the outcome of any administrative proceedings. Mr. Mancuso would request an opportunity to more fully brief the issue of Acting Secretary Wolf's lack of authority, as well as to address any concerns regarding jurisdiction that remain.

*Continuing Concerns of Petitioner*

1. That a TRO is necessary to enjoin Respondents from removing Mr. Mancuso to Colombia because it is highly probable that should he receive an unfavorable ruling from an immigration judge, he will be removed to that country immediately.

2. That the deficient administrative process demands that the asylum office issue a Form 863, to be served upon Petitioner and the Court, with a finding of reasonable fear of persecution or torture if returned to Colombia.

3. That the continuing unsafe conditions of confinement at the immigration detention facility[4] at which Petitioner is held require that Petitioner be transferred to the Washington, D.C. metropolitan area during the pendency of this litigation.

4. That as Acting Secretary Wolf lacked any legal authority to change Mr. Mancuso's country of removal or determine that his removal to Italy would be prejudicial to the United States, Mr. Mancuso should be removed immediately to Italy pursuant to the administrative order of removal dated April 15, 2020.

5. That in light of the administrative process deficiencies and the change of country of removal, that ICE immediately provide Petitioner with his alien file "A-File."

*Petitioner's Comment Regarding Respondents' Statement*

For the record, Mr. Mancuso has not moved the Court for relief herein. He merely has detailed the status of his administrative process, as ordered by the Court. Had Respondents properly conducted that process, Mr. Mancuso's description would have been far briefer. In addition, he has described a recent, significant and highly relevant district court decision in order to address concerns vocalized by the Court at the September 2, 2020 hearing. Finally, he has noted his continuing concerns.

With regard to Respondents' statements regarding its lack of time to appropriately review and respond to the matters discussed herein, while Mr. Mancuso is understanding of the time constraints imposed, he notes that his

---

[4] *Whistleblowing Nurse from Detention Center in Georgia Reports Unsafe Practices that Promote the Spread of COVID-19 in ICE Detention*, Government Accountability Project, Press Release, September 14, 2020. See https://bit.ly/3hA0RDn (last visited Sept. 15, 2020).

statement does not require a response as it has not requested any action.  In addition, Respondents' counsel was consistently informed of the majority of events occurring during Mr. Mancuso's administrative process in real-time, both telephonically and via email.  It should also be noted that it was representatives acting on behalf of Respondents themselves who committed the acts detailed herein, so they were well aware of what occurred.  Moreover, the recent federal district court decision discussed in Mr. Mancuso's statement has been widely publicized given the nature of the ruling.

Mr. Mancuso would welcome an opportunity to fully brief the Court on the legal issues arising from the events described herein, as well as the recently changed legal landscape regarding his arguments that Acting Secretary Wolf lacked any authority to undertake a change to his country of removal.

## **RESPONDENTS' STATEMENT**

Based on the Court's statements during the September 2, 2020, hearing, Respondents believed the purpose of the Joint Status Report was simply to apprise the Court of the progress of the administrative proceedings regarding Petitioner's removal and reasonable fear interview. Petitioner has, however, included what amounts to a motion for relief and several substantive arguments regarding their case. Respondents have not had sufficient time to review and respond to the issues and "concerns" presented in Petitioner's Statement because Respondents did not receive Petitioner's Statement until this morning and subsequently received a slightly revised version of Petitioner's Statement today at approximately 4:27 p.m. Accordingly, to the extent that the Court seeks to take any action on the issues and requests included in Petitioner's Statement, Respondents respectfully request an opportunity to provide a substantive response to the Court prior to it making any ruling on the requests presented by Petitioner.

Dated: September 16, 2020

Respectfully submitted,

COUNSEL FOR PETITIONER:

WMR Immigration Law Group, LLC

By:_____
Hector G. Mora, Esq.
District of Colombia Bar #489889
1789 Columbia Road NW, Ste. 200
Washington, D.C.  20009
Ph: (202) 558-6515
HMORA@WMR-LAW.COM

RETURETA  &  WASSEM,  P.L.L.C.

By:_____
Manuel J. Retureta, Esq.
District of Columbia Bar #430006
300 New Jersey Avenue, NW, Suite 900
Washington, D.C.  20001
202.450.6119
MJR@RETURETAWASSEM.COM

/s/ *Joaquin Perez*

_____
Joaquin Perez, Esq.
6780 Coral Way
Miami, Florida  33155
305.261.4000
JPLAW1@BELLSOUTH.NET

COUNSEL FOR RESPONDENTS:

MICHAEL R. SHERWIN
United States Attorney

DANIEL F. VANHORN
D.C. Bar No. 924092
Chief, Civil Division

By:     /s/ April Denise Seabrook
    _____
APRIL DENISE SEABROOK
D.C. Bar No. 993730
Assistant United States Attorney
555 Fourth Street, N.W.
Washington, D.C.  20530
Phone:  202-252-2525
April.Seabrook@usdoj.gov